Catron, Ch. J.
The plaintiff alleges the defendant did unlawfully detain his mare. The defendant pleads he did not unlawfully detain her.
The defendant lived on a leading road in Overton county, and kept a public house, having a large farm. The mare was left with him by George W. Campbell, to be fed and keptfor an indefinite butshort time. Campbell was the apparent owner, and the plaintiff, Hunter, was at the house of Sevier whilst the mare was there, on an errand to buy her from Campbell, as he ihformed Sevier, who had no knowledge Hunter set up any claim to her until the day suit was brought.
The court charged the jury, that before Hunter could recover in detinue in this case, he must prove he demanded the mare from Sevier, and a verdict passed for the defendant.
This presents the question, whether a naked bailee of a horse kept for compensation to be paid him, is subject to be sued by the true owner before he demands the horse; or, second, offers to pay the bailee for the keeping? We think it does not sufficiently appear in this case that Sevier .received the horse in the capacity of innkeeper, or that he had a right to detain him for the keeping as against Campbell; if he had the right as against Campbell, he had it as against Hunter also. 2 Esp. N. P. 195, trover, 5. If A injuriously take away the horse of B, and put him into an inn to be kept, and D come and demand' him, he shall not have him until he hath satisfied the innkeeper for his meat; for when an innkeeper takes a horse into his keeping, he is not bound to enquire who is the owner of the horse which he is obliged to keep, let him belong to whom it will, and therefore no reason that the innkeeper should bo obliged to deliver him till he is satisfied. 3 Bac. Abr. Inns and Innkeepers, D, 667: 2 Esp. N. P. 195.
*131 In this case of bailment, not only a demand is necessary, but tender of the amount due^for keeping, before detinue can be supported, until which done, the detainer is not wrongful. The bailee, who in good faith receives goods from the apparent owner, as Sevier did in this case, may rightfully re-deliver them to the bailor after demand made for them. And Bacon and Comyn hold, after suit brought, that a recovery for the chattels cannot be bad; viz,: If I deliver goods toB, andC, that hath right, demands them of him, if B, either before or pending the action, deliver over the goods to me, this is a good bar to the action of C brought against B; for since B hath undertaken to deliver the goods back to me, he shall not be chargeable for the honest performance of that undertaking, for B, that is trusted with my possession, shall not remove nor alter my possession, and therefore shall not be put to answer but for that to which the law obliges him. 1 Bac. Abr. Bailment D: 5 Comyn’s Dig., 261: Pleading in Detinue, 2x2. These authorities are cited to show the marked distinction recognized between detinue against a bailee, liable to the bailor, in almost any event for the return of the property, and for whom the possession is holden, and one holding and converting property as his own tortiously. This distinction was taken, and an important decision based on it, itt Jones vs. Littlefield, 3 Yerger’s Rep. 136.
The North Carolina decisions requiring demand of the property from the defendant before detinue is brought, are well reconcileable with the British authorities, when the distinction is attended to; and so Judge Whyte understood the law to be as appears from the above cause, and as he now informs tis. Judge Haywood’s complaint in the cause of Lewis vs. Williams, in his note, principally rests on the fact that the statute of limitations is running against the plaintiff before the defendant has a cause of action, if a demand be necessary, which is not reconcilable with any recognized *132 principles of law, giving effect to time, to form a bar. 1 Haywood’s Rep. 150. This consequence does not apply to the mere bailee. He .holds possession for the bailor, and adversely to no one claiming the property; he claims no title that can be confirmed, and is in a situation where he ought not to be involved in litigation, having no right nor claiming any to the property; nor could he be rendered liable by the common law, for by it he could, in former times, when he was sued, call upon the bailor to interplead, and by scire facias garnishee and bring him into the suit to contest the right of the plaintiff: as if A bails the goods of C to B, in detinue by C against B, he may plead bailment by A to be re-delivered to A, and pray he may be garnisheed and brought in to defend. 5 Comyn’s Dig. 664: Pleader Detinue, 2x2. This done and the bailee is allowed no other plea, and is out of court. Ibid.
This doctrine, convenient and excellent as it should seem it must have been in practice, has fallen into disuse, and is obsolete in this country, probably owing to the circumstance that in England, where there is no slave property, the action of detinue has given way to the action of trover, requiring much less certainty in description and proof to sustain it. 3 Blackstone’s Commentaries, 152. Yet the innocent bailee is protected in the action of detinue to-a remarkable extent. We have seen D may plead a delivery to A, the bailor, to whose use the goods were bailed, though the delivery was after the action brought, but of course before plea pleaded. 5 Comyn’s Digest, 663: Pleading in Detinue, 2x2. For the purpose of protecting the innocent and disinterested bailee, a demand from him is required by the party claiming the property adversely to the bailor, so that he may immediately return the property, as he is by his contract bound to do, and let the bailor defend his own title. Society cannot at any day have sanctioned a doctrine so mischievous as to hold that the tavern keeper, *133 stable keeper, or large agistor, who keeps horses for others, should be subject to be sued, and forced to defend the title to every horse put in his possession, without some mode of throwing the defence on the bailor, who alone had knowledge how to defend and show his title.
In prosecuting the substitute for the action of detinue, the action of trover, the liabilities of the bailee are well settled. In trover the action equally lies where the taking has been tortious, or where the defendant has lawfully obtained possession of the plaintiff’s goods, and af-terwards converted them; but what shall be evidence of conversion in these two cases, is different. Where the taking of the goods has been tortious, it is an actual conversion; where, however, they have been found or bailed, there an actual demand and refusal must be shown in order to establish a conversion, unless an actual conversion can proved. A demand on the wife or servant of the defendant, with a refusal, is no evidence of conversion; or a demand by the owner, if the defendant answers, and the fact be so, that he does not know whether he is the owner, and takes time to ascertain it. 2 Esp. N. P. Trover 202.
We are again reviving the action of detinue, and having abandoned the old rules applying to the action, can only adopt those £iin force and use,” in the substitute. For that the garnishment of the bailor by the bailee, when sued, is not in force or use, within the meaning of the statutes of North Carolina, or our constitution, adopting the British common law, is manifest from the reports of the North Carolina adjudications. 1 Haywood, 29, 150. And so as to the -rules of practice formerly in use. Judge Haywood, in his note to Lewis vs. Williams, informs us that, in their courts, it was given in evidence under the plea of non detinet, that the defendant had always been ready, and still was ready, to deliver the property to the plaintiff; instead of being pleaded as formerly, with an offer to deliver instantly in- *134 lo court, with a prayer that the court would appoint a day of delivery, (Id. 353,) as was the English common law. Sayer on Damages, 69. We take it for granted the scire facias to interplead has never been in force or use in Tennessee, and is obsolete; and that the rule adopted in the action of trover requiring a demand of the property is the only safe and true rule for the protection of the bailee, in the action of detinue. No good reason exists why it should not be applied, and a demand be equally necessary in both actions. This court has liolden in a case of tortious conversion of goods, det-inue may be supported although the defendant had parted with the property before he was sued. Haly vs. Rowan, 5 Yerger’s Reports, 301. The same damages are recovered for the detention as for the conversion, and the remedies as practised by us differ only in name, save that occasionally a slave is desired to be obtained in specie. The evidence of property in the plaintiff is the same. The facts that establish a conversion equally establish a detainer, and it matters not whether the property was obtained by contract or tort; either remedy may be resorted to, and if the detention was tortious, the suit does not survive against the executor of the defendant, but is treated as an action of tort, not contract. Jones vs. Littlefield, 3 Yerger’s Rep. 136.
Much stress is laid on the circumstance that this verdict and judgment will bar the recovery of Hunter after demand made. This is true. In North Carolina, we are told, where a demand from bailees was required, if the plaintiff failed in his proof he was nonsuited and not barred. This is so. But in this State the courts have at all times been holden not to have the power to order a nonsuit for want of proof. The plaintiff is to judge whether his case is made out, and if he sees proper to let a verdict go against him it is his oversight. Suppose this had been an action of trover. Then clearly there would have been no evidence of conversion by Sevier; *135 yet if Hunter saw fit to suffer a verdict against him, it would have been his folly, and he wouldhave been barred. JEven in assumpsit, on a promissory note, if the plaintiff fails to introduce it, and lets a verdict go, he is barred, and ought to be. So is the defendant concluded if he has paid and fails to introduce his receipt of payment. Litigation must end at some time.
Hunter knew Sevier ought not to be charged. He said to the witnesses he had been waiting to find the mare in solvent hands to sue for her, she having passed through half a dozen that were insolvent. He was afraid to demand lest she should be returned to Campbell. Time has long since barred Hunter no doubt, but if it has not he is paying the price of his folly. Sevier did plead the proper and only plea his situation justified, that he did not unlawfully detain, and it was properly found for him. There was no proof of unlawful detainer, but directly the reverse.
Hunter may pursue the bailor, Campbell. The record in this cause will be no evidence in an action against him for the same property.
The circuit court, therefore, correctly charged the jury, “that before Hunter could recover from Sevier he must prove he had demanded the mare of him.”
The judgment will be affirmed and the defendant go hence.
Peck, J. concurred.